### UNITED STATES, v. MILLER.
#### No. 14363.

United States District Court,
E. D. Pennsylvania.
March 31, 1948.

Asher W. Schwartz, Sp. Asst. to Atty. Gen., of Washington, D.C., and Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., for plaintiff.

Jacob Kossman, of Philadelphia, Pa., for defendant.

GANEY, District Judge.

The defendant, having been indicted for perjury under section 125 of the Criminal Code, 18 U.S.C.A. § 231,[1] has filed a motion under Rule 12 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which is now before us, to dismiss the indictment. The material facts leading up to the indictment are as follows: In the latter part of 1946 a Federal grand jury was engaged in an investigation to determine whether there had been any law violations in connection with the activities and operations of stevedoring concerns performed at the Port of Philadelphia under contracts with the United States Army and the War Shipping Administration. On December 12, 1946, the defendant, not then charged with any crime but who had been interviewed several times previously by agents of the Federal Bureau of Investigation, and whose activities while he was an employee of a stevedore concern were, in part at least, the object of the investigation,[2] appeared, after being subpoenaed, as a witness before the grand jury. Immediately prior to his entering the grand jury room, an F. B. I. agent urged him "to go in and testify and tell the truth." In the course of interrogating the defendant, in view of the nature of the questions then to be asked, the attorney for the Government advised him for the

---

[1] 1948 Criminal Code, 18 U.S.C.A. § 1621.

[2] This fact is admitted by the Government in the indictment.

first time that he had the privilege of refusing to answer any questions which would tend to be self-incriminating. In response to this warning, the defendant indicated clearly that he was "only too glad to answer" any question which he was able. He then went on to testify that he had never received more than two pay envelopes at one time from his employer on pay days. Several months later, on September 15, 1947, the defendant was again subpoenaed to appear before a second grand jury. When the purpose of his having been summoned was disclosed to him, namely to consider the truth of his testimony given before the previous empaneled grand jury, the defendant exercised his constitutional privilege of refusing to testify. On November 10, 1947, having the benefit of both the testimony of other witnesses to the effect that the defendant on several occasions had received more than two pay envelopes at one time, and a brief excerpt from the transcript of the testimony given by the defendant before the grand jury on December 12, 1946, relating to his denial of ever receiving more than two envelopes at one time, a third grand jury found the indictment charging the defendant with having committed perjury.

The grounds, as stated in the defendant's motion to dismiss, are as follows:

"1. The indictment does not state facts sufficient to constitute an offense against the United States.

"2. The indictment was founded in violation of the constitutional rights of the Defendant; *the privilege of self-incrimination.*"

The defendant does not seriously press the first ground. The reason is obvious; a mere reading of the indictment is all that is necessary to ascertain that the ingredients necessary to state a crime against the United States, as required by the provisions of the perjury statute, are stated therein. See United States v. Harris, 311 U.S. 292, 61 S.Ct. 217, 85 L.Ed. 196; LaSalle v. United States, 10 Cir., 155 F.2d 452. It is the second ground, to which the remaining part of this opinion is devoted, upon which the defendant chiefly relies to nullify the indictment.

The Fifth Amendment to the Constitution provides that no person "shall be compelled in any Criminal Case to be a witness against himself." An investigation by a grand jury for the purpose of determining whether a crime has been committed against the United States is a "criminal case" within the meaning of this Amendment. Counselman v. Hitchcock, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110; Camarota v. United States, 3 Cir., 111 F.2d 243. Thus a defendant cannot by legal means be compelled to testify before a grand jury.[3] This is so even though he fails to claim his constitutional privilege against self-incrimination, unless he waives it after being properly warned of his privilege. An ordinary witness, however, stands on a different footing. He may not, upon being subpoenaed to do so, refuse to take the stand, be sworn, and to testify before the grand jury. Blair v. United States, 250 U.S. 273, 280-282, 39 S.Ct. 468, 63 L.Ed. 979. But he is far from being entirely without protection. At the hearing, the witness may, if he so desires, rely on his constitutional privilege of refusing to respond to questions the answers to which would reveal facts or circumstances which might tend to incriminate him. Counselman v. Hitchcock, supra; Camarota v. United States, supra. Provided no fraud or duress is used upon the witness, there is no obligation upon the attorney for the Government to warn him of his constitutional privilege or the dangers of self-incrimination. Thompson v. United States, 7 Cir., 10 F.2d 781, 784; United States v. Block et al. 2 Cir., 88 F.2d 618,

---

[3] Sec. 2268 of Wigmore on Evidence (1940) states: "2 *Accused.* For the party-defendant in a criminal case, the privilege permits him to refuse answering any questions whatever in the cause, on the general principle that it 'tends to incriminate' (ante Sec. 2260). (a) This being so, the prosecution could never-

theless on principle have a right at least to call him to be sworn, because, as with an ordinary witness, it could not be known beforehand whether he would exercise his privilege. But no court seems ever to have sanctioned this application of the principle."

certiorari denied 301 U.S. 690, 57 S.Ct. 793, 81 L.Ed. 1347; United States v. Wilson, D.C.Del., 42 F.Supp. 721. The witness, upon oath, must claim his privilege in no uncertain terms at the proceeding in which the information is sought or he will not thereafter be considered to have been "compelled" within the meaning of the Amendment. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 113, 47 S.Ct. 302, 71 L.Ed. 560; United States v. Murdock, 284 U.S. 141, 148, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L.R. 1376; United States v. Benjamin et al, 2 Cir., 120 F.2d 521, 522.

During the proceeding before the first grand jury, the attorney for the Government advised the now defendant that he was at liberty to refuse to testify as to any matter which would tend to incriminate him; the testimony given by him prior to his being warned of his constitutional privilege was in no wise prejudicial to him, it being concerned with preliminary or routine matters. Moreover his entire testimony in and of itself revealed no self-incriminating circumstances, and even if it did, he was not indicted for a crime by reason thereof. Nor has his testimony alone been taken as a basis for comparison by the grand jury in determining whether there was sufficient evidence to indict him for perjury. Although an attempt to that end was made by the government before the second grand jury, he was not asked to admit that his prior statements were false or to make statements which would be contradictory of his previous ones. It was information obtained solely from testimony of other witnesses which the third grand jury used as a criterion for determining whether or not there was sufficient evidence to indict him. The F. B. I. agent's last minute urging did not amount to fraud or duress; it merely told the defendant what he, subject to his constitutional privilege, of which he was subsequently advised, was required to do. Had he been compelled to testify before the second grand jury or indicted for a crime by reason of his divulgence of facts taken alone or in connection with circumstances supplied by the testimony of witnesses other than the defendant before the grand jury, a different question might be posed. United States v. Edgerton, D. C., 80 F. 374. But see: O'Connell v. United States, 2 Cir., 40 F.2d 201, 205; United States v. Hirsch et al, 2 Cir., 74 F.2d 215, 219; Mulloney v. United States, 1 Cir., 79 F.2d 566, 578-580; United States v. Benjamin et al, 2 Cir., 120 F.2d 521, 522; United States v. Kimball, C.C.S.D.N.Y., 117 F. 156; United States v. Price, C.C.S.D.N.Y., 163 F. 904, noted 22 Harv.L.Rev. 60 (1908). Under the circumstances of this case the defendant may not now seek the protection of the Fifth Amendment. The immunity afforded by that Amendment relates to past deeds. "It is not a license to the person testifying to commit perjury." Claiborne v. United States, 8 Cir., 77 F.2d 682, 690; United States v. Cason, D.C., W.D.La., 39 F.Supp. 731, 734. Also see Glickstein v. United States, 222 U.S. 139, 142, 32 S.Ct. 71, 56 L.Ed. 128; Edelstein v. United States, 8 Cir., 149 F. 636, 9 L.R.A.,N.S., 236; Wechsler v. United States, 2 Cir., 158 F. 579.

A witness has the option of telling the truth or furnishing himself protection by remaining silent when his answers might tend to be self-incriminating.[4] He may not, without leaving behind him the bulwark of the Fifth Amendment, provide himself, and incidentally others, greater protection by knowingly testifying falsely. At the hearing before the first grand jury, the defendant, upon being advised of his constitutional privilege, could have, but did not, refuse to testify. A subsequently empaneled grand jury has concluded that there was sufficient evidence to find an indictment charging him with perjury. He must at least plead to that charge.

Motion denied.

---

[4] Wigmore, Evidence (1940) Sec. 2268.