## PEOPLE *v.* ALLEN

1. CRIMINAL LAW — PRELIMINARY EXAMINATION — DUE PROCESS — EVIDENCE — PRIVILEGE AGAINST SELF-INCRIMINATION — PERJURY.

    Testimony of police officers before a grand jury investigating police irregularities, which is inadmissible in any subsequent criminal proceedings against such police officers because of the privilege against self-incrimination, is not rendered admissible because such testimony is alleged by the prosecution to be false.

2. CONSTITUTIONAL LAW—PRIVILEGE AGAINST SELF-INCRIMINATION—WAIVER—COERCION—REMOVAL FROM POLICE FORCE.

    The fact that a police officer was made aware that he could be removed from the police force if he invoked his privilege against self-incrimination during a grand jury investigation is sufficient to support a finding that the officer's waiver of the privilege was coerced, even though removal was not mandatory.

3. CRIMINAL LAW — DUE PROCESS — EVIDENCE — TESTIMONY OF DEFENDANTS BEFORE GRAND JURY—PRIVILEGE AGAINST SELF-INCRIMINATION—WAIVER—COERCION.

    There must be an evidentiary hearing on the question of whether statements given by police officers to a grand jury were voluntary before those statements can be placed in evidence at a preliminary examination of the police officers on a charge of perjury.

Appeal from Recorder's Court of Detroit, Schemanske (Frank G.), J. Submitted Division 1

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur 2d, Grand Jury § 38.
[2] 43 Am Jur, Public Officers § 194; 47 Am Jur, Sheriffs, Police, and Constables § 16.
[3] 41 Am Jur, Perjury § 51 *et seq.*

June 13, 1968, at Detroit. (Docket Nos. 4,122–4,128.) Decided December 31, 1968.

Danial Allen, Leon Barnett, Frederick J. Breslin, Robert Brown, Gustave Herbstreit, Anthony F. Klimbal, and Frank Zugel were charged with perjury. Defendants move to quash the information. Motion denied. Defendants appeal by leave. Reversed and remanded.

*Frank J. Kelley,* Attorney General, and *John H. Shepherd,* Special Assistant Attorney General, for the people.

*Boesky and Lippit,* for defendants.

NEWBLATT, J.   On January 16, 1967, the United States Supreme Court decided both *Garrity* v. *New Jersey* (1967), 385 US 493 (87 S Ct 616, 17 L Ed 2d 562), and *Spevack* v. *Klein* (1967), 385 US 551 (87 S Ct 626, 17 L Ed 2d 574).   In *Garrity* the Court held that confessions of police officers made during an investigation conducted by the attorney general of the state of New Jersey into certain irregularities in the courts of that state were inadmissible in the subsequent criminal trials of the officers for the offenses being investigated.   Before the officers testified in the investigation they had been advised that refusal to answer would subject them to removal from office under a New Jersey statute.   The Court reasoned that they had been coerced to give up their rights to remain silent and that such coercion rendered the confessions involuntary barring their use against the officers in the subsequent criminal proceedings. In *Spevack,* the Court held that an attorney could not be disbarred for refusal to testify at a proceeding to discipline him as a member of the New

York bar. His refusal to testify was on the grounds
that such testimony may have tended to incriminate
him. The Court reasoned that the protection af-
forded by the self-incrimination clause of the Fifth
Amendment as applied to the states by the Four-
teenth Amendment could not be rendered ineffective
by permitting disbarment as the price for exercising
the privilege.

It is upon the principles enunciated in these two
cases that the case at bar must be decided.[1] Here
the defendants are all police officers of the city of
Detroit who were subpoenaed to testify before the
Honorable Edward S. Piggins acting as the so-called
"one man grand jury" conducting an investigation
under CL 1948, § 767.3, as amended by PA 1965,
No 251 (Stat Ann 1968 Cum Supp § 28.943) into
crimes dealing with bribery and other corruption of
public officials, vice, and gambling. When the de-
fendants appeared and testified, each was advised of
his constitutional right to remain silent. Most were
asked whether they knew about a particular restau-
rant and as to the receipt of bribes from two named
persons. Upon denials, they were interrogated re-
lating to receipt of gifts and gratuities from bar
owners and liquor licensees in the city of Detroit.
They were not questioned as to whether such gra-
tuities were received as bribes or as consideration
for omission to perform duties. Following their tes-
timony, defendants were arrested upon grand juror-
issued warrants and arraigned upon charges of per-
jury based upon the answers to the questions before
the grand juror. Preliminary examinations were
held on August 15, 16, and 17, 1966 and the examin-
ing magistrate, over defendants' objections, received

---

[1] Two later cases are *Uniform Sanitation Men Assn.* v. *Commis-
sioner of Sanitation* (1968), 392 US 280 (88 S Ct 1917, 20 L Ed
2d 1089), and *Gardner* v. *Broderick* (1968), 392 US 273 (88 S Ct
1913, 20 L Ed 2d 1082).

in evidence the questions and answers before the grand juror. Defendants' objections were based upon the claim that allowing such evidence denied them their rights under the Fifth and Fourteenth Amendments. They further objected claiming that the questions asked were not material to the inquiry. Defendants were bound over for trial upon additional evidence consisting of testimony from bar owners and operators that defendants had in fact received gifts and gratuities contrary to their testimony before the grand juror. Motions prior to trial to quash the information and dismiss the perjury charges were made and denied. From the orders of denial leave to appeal has been granted.

Another series of facts must be taken note of prior to considering the parties' theories and discussing the applicability of the *Garrity* and *Spevack* holdings. Defendants, by way of affidavits in support of their motions before the lower court, asserted that they believed that if they had invoked the privilege of remaining silent, they would have been suspended from the police department; that their beliefs in this regard were based upon opinion no. 1863 of the attorney general dated November 18, 1954 indicating removal under such circumstances would be justified.[2] The defendants' beliefs as to suspension and removal were also based, ac-

---

[2] OAG 1952–1954, p 449. Syllabus 4 reads:

"Refusal of such police officer to testify in 1-man grand jury proceedings, or before police commissioner or trial board, concerning charges against him, because that it might incriminate him, would in itself constitute a sufficient ground for his removal."

That opinion closes with the following emphatic paragraph at page 452:

"In view of the law enunciated in the cases cited above, I repeat that, in my considered judgment, the commissioner of police and the trial board would be legally justified in removing any officer who in the grand jury room, or during the hearing, on charges of misfeasance, malfeasance, or other offense, refuses to testify on the ground that his answers might incriminate him."

cording to their affidavits, upon information they had received prior to their appearances that the special grand jury prosecutor had, during the questioning of another police officer in the grand jury proceedings, told that officer that anyone who refused to testify would in fact be removed.[3]

---

3 From agreed statement of facts:

"*Q.* May I have your full name?

"*A.* Charles Allen Smith.

"*Q.* Your residence address?

"*A.* 8855 Rutland, Detroit.

"*Q.* Your business or occupation?

"*A.* I'm a patrolman with the Detroit Police Department.

"*Q.* And how long have you been a member of the Detroit Police Department?

"*A.* Twelve and a half years.

"*Q.* Mr. Colombo, your attorney, is at your side, is he not?

"*A.* That's correct.

"*Q.* And you recognize the fact that at any time during the course of this interrogation that you are at liberty and are free to turn to your counsel and ask his advice. Do you understand that?

"*A.* Yes, yes.

"*Q.* Do you also understand that anything that you might say that might tend to incriminate you could possibly be used against you at a later time? Do you understand that?

"*A.* Yes. May I ask a question?

"*Q.* Try me.

"*A.* I don't really—I have never been questioned about—

"*Q.* (*interposing*): Incriminating yourself—you don't understand that?

"*A.* I understand it to a degree.

"*Q.* What is it that you don't understand?

"*A.* Well, those questions—

"*Q.* (*interposing*): Let's oversimplify it, if a witness on the witness stand would admit to, for instance a burglary—

"*A.* (*interposing*): Yes.

"*Q.* (*continuing*): —that evidence that he gave could be used against him at a later time.

"*A.* Yes.

"*Q.* In the production of—in the prosecution of him.

"*A.* Yes, that would be a so-called confession or admission, is that right?

"*Q.* It could be used against him.

"*A.* Yes.

"*Q.* In whatever legal sense it manifested itself, either as an admission or a confession.

"*A.* I see. And those admissions—a person is at liberty in this so-called burglary or robbery—he would be at liberty, later, not to answer?

"*Q.* Well, he could take the Fifth Amendment, but as a patrolman of the Detroit Police Department, I must tell you that as a police officer, called before this grand jury, if you took the Fifth Amend-

Now to the issue of whether *Garrity* and *Spevack* apply. Since they appear to apply *prima facie,* it is more appropriate to examine the people's claim that they do not. The people's main assertion is that *Garrity* and *Spevack* give no immunity from perjury; that the officers in this case had two choices: (1) they could have told the truth and challenged subsequent criminal prosecution for bribery on the theory that their admissions were coerced; or (2) they could have claimed the privilege, refused to testify and then challenged a subsequent dismissal from the police department on the theory that the claiming of the privilege to remain silent is not sufficient grounds for removal or dismissal. It is an essential part of the people's theory that the third alternative of committing perjury was not available to the defendants for even a denial of constitutional rights cannot constitute a license to commit perjury.

That argument has a number of answers, all of which emphasize that the perjury distinction upon which the position is founded is without merit. The people say that the only justification for prosecution here in the face of *Garrity* is that the answers of the defendants are false. So, assuming falsity, the prosecution commences. Just as the consequences of coercion or other violation of a constitutional right most frequently are raised in the context of a challenge to the admissibility of evidence, so here the issue is whether the questions and answers before the grand juror are admissible in the perjury

ment, it could constitute misconduct, necessitating your removal from the police department.

"*A.* In other words, that would be the only reprisal or the only alternative of the department—to dismiss me?

"*Q.* That is my opinion.

"*A.* To take me before the trial board after due process, as such?

"*Q.* You'd rather seal your own fate in my opinion, by taking the Fifth Amendment?"

prosecution. To determine admissibility (and to distinguish from *Garrity*), the people claim the testimony is false, precisely what the prosecution intends to ultimately prove. So for purposes of admissibility, the people assume falsity, one of the ultimate issues to be subsequently determined at trial. Clearly, indulging in such an assumption cannot be allowed for it would destroy the presumption of innocence.

Equally devastating to the people's theory is the fact that although it is stated in terms of an exception to *Garrity* for perjury, more precisely stated, it would be asserting an exception to *Garrity* where the prosecuting authority *charges* perjury (as distinguished from the substantive offense of bribery). It is as if the people are saying:

"When we *charge* the substantive offense, *Garrity* applies and when we *charge* perjury it does not."

Under our system the prosecuting authority is not authorized to nullify a constitutional right by drawing such a gossamer distinction.

To hold that the *Garrity* principle does not apply to a case where perjury is charged would violate another recognized and fundamental principle of constitutional application—that one cannot justify a violation or an invasion of a constitutional right by what such invasion reveals. *United States* v. *DiRe* (1948), 332 US 581 (68 S Ct 222, 92 L Ed 210); *United States* v. *Como* (CA2, 1965), 340 F2d 891.

*Garrity* and *Spevack* furnish the principles that apply to the doctrine of *waiver* of the right to refuse to incriminate oneself. Of course, what one reveals as a result of a waiver is of no import in determining whether the waiver was voluntary or coerced.[4] If

---

4 Exceptions to that statement exist as to matters such as the mental condition of the declarant, ability to hear, *etc.*

the waiver was coerced, the result thereof cannot be received in evidence. As a matter of fact this whole question of whether perjury prosecution is excluded from the *Garrity-Spevack* principle has already been concisely decided in *Garrity* where the majority's holding was:

"* * * We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use *in subsequent criminal proceedings* of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic." (Italics supplied).

The prosecution's theory is based on *United States v. Miller* (ED Pa, 1948), 80 F Supp 979, and *United States v. Winter* (CA 2, 1965), 348 F2d 204. We now hold that neither case is authority for the position of the people here. In *Miller,* the defendant was being prosecuted for alleged perjury in his testimony before a Federal grand jury and sought to dismiss the indictment on the basis that the prosecution violated his Fifth Amendment rights. He had originally testified before the grand jury as a witness and was advised prior to his testimony that he had the privilege of refusing to answer any questions which would tend to be self-incriminating. Nevertheless he answered and was subsequently charged. The people rely upon the language of Judge Ganey, found p 982:

"* * * Under the circumstances of this case the defendant may not now seek the protection of the Fifth Amendment. The immunity afforded by that Amendment relates to past deeds. 'It is not a license to the person testifying to commit perjury.' * * *

"A witness has the option of telling the truth or furnishing himself protection by remaining silent

when his answers might tend to be self-incriminating. He may not, without leaving behind him the bulwark of the Fifth Amendment, provide himself, and incidentally others, greater protection by knowingly testifying falsely. At the hearing before the first grand jury, the defendant, upon being advised of his constitutional privilege, could have, but did not, refuse to testify. A subsequently empaneled grand jury has concluded that there was sufficient evidence to find an indictment charging him with perjury. He must at least plead to that charge."

This case and the above language cannot support the people's position here if in fact the defendants were coerced by fear and threats of job forfeiture to waive the privilege of refusing to answer. No basis to vitiate a waiver of the privilege, such as coercion, duress or fraud existed in *Miller*.

*Winter* likewise affords little support for the people's position. The defendant there was charged with perjury resulting from his testimony before a Federal grand jury. The attack upon the conviction was made on the ground that the defendant was not advised prior to his entering the grand jury room that he had a right to consult with counsel and that such advice was required under the Sixth Amendment. The court held that even if the defendant were entitled to such advice before entering the grand jury, omission so to advise him is "no defense to a charge that he thereafter perjured himself in the grand jury room".[5] Like *Miller* and unlike the case at bar, in *Winter* there was absolutely no claim of coercion of, nor any duress or fraud worked upon, the defendant to either testify or give up his right to counsel under the Sixth Amendment.

To make the distinction even more emphatic, *Winter* referred to and relied upon another case

---

[5] *Winter*, p 208.

decided by the same circuit, *United States* v. *Remington* (1953), 208 F2d 567, which in turn relied upon *United States* v. *Williams* (1951), 341 US 58 (71 S Ct 595, 95 L Ed 747), neither of which is authority for the people's position here. *Remington* held that one who gave false testimony in a trial upon an indictment subsequently invalidated nevertheless is subject to prosecution and *Williams* held similarly that one who testified falsely at trial upon an indictment later determined to be invalid as stating no offense was still subject to perjury prosecution. Patently, neither case supports the claim that a statement given as a result of a coerced waiver of Fifth Amendment rights can be the basis for a perjury prosecution.

The conclusion is, therefore, compelled that the Fifth and Fourteenth Amendments' benefits of freedom from coerced waiver of the right to remain silent, whether they pertain to a previously convicted felon, ordinary or extraordinary citizen or a police officer must be respected for the protection of each one and all of us. Coercion can be worked upon the least among us or upon the most—merely the techniques differ. Our generation bears witness with sadness, torment and fear to the terrors and dangers that the techniques of psychological coercion pose for civilization. Psychological coercion, brain washing, if you will, has proven to be as effective, if not a more effective, weapon for dominating the human spirit than physical bestiality. The legitimate exercise of the coercive power of government must never be asserted to defeat, nor upheld when in conflict with, the rights of individual man to be free from such coercion when determining whether to exercise a constitutional right. Government repression is the sad, but certain result of this type of false syllogistic argument of the people for if coercion can

be ignored so easily by such word play, coercion without such word play and false justification is lurking nearby.

The people claim a distinction between *Garrity* and the case at bar in that in *Garrity* removal from the police department was mandatory if the privilege was asserted while in Michigan, the attorney general had only ruled that removal would be justified. Again the people are asserting a technical distinction that in truth exists, but has no vitality when dealing with a question of whether officers were in fact coerced. The plain and simple claim before this Court, agreed to by counsel, is that the grand jury prosecutor had threatened an officer with removal if the privilege was asserted; that this threat was transmitted to and was within the knowledge of these defendants who were also aware of the attorney general's opinion and that these defendants felt coerced by such threats. If true, their testimony would have been the result of an involuntary waiver and whether the removal was merely justified or made mandatory can have no force. Coercion is coercion and cases cannot be so narrowly limited to the facts when the principles enunciated are so clearly applicable. The people argue that there is no showing that *these* defendants were threatened with discharge. The defendants' claims of coercion are based upon the affidavits which were made a part of the agreed statement of facts. Although made a part of the agreed statement of facts, it is clear that these affidavits were not filed in sufficient time before the lower court to have been considered either by the trial judge in denying the defendants' motions to quash or to permit the people to contest the content thereof. Since the trial court did not rest its decision upon a finding of voluntariness of the defendants' testimony before the

grand juror, it cannot now be held that the people have had an opportunity for an evidentiary hearing on that issue. This opportunity must be afforded. The case will therefore be remanded for an evidentiary hearing under *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331.

As to the claim of the defendants that the questions asked as to which the alleged false answers were given, were not material to the inquiry, there is no doubt that questions as to the receipt of gratuities by officers, although imprecisely asked and possibly vague, were pertinent to the grand jury inquiry into crimes of bribery of public officials for purposes of securing their failure to perform their duties.

Reversed and remanded.

T. G. KAVANAGH, P. J., and LEVIN, J., concurred.