PEOPLE v JOBSON

·Docket No. 156452. Submitted August 11, 1993, at Detroit. Decided
June 20, 1994, at 9:40 A.M.

Phillip Jobson was convicted in the 36th District Court, Chris E.
Stith, J., of entering a building without the owner's permission.
The conviction arose out of unauthorized raids of two houses by
Detroit police officers, including the defendant. Introduced as
evidence at trial was the testimony of a police sergeant who
had questioned the defendant concerning whether he had been
to the houses and had received negative replies from the
defendant. The defendant appealed. The Recorder's Court of
Detroit, Michael L. Sapala, J., granted the defendant a new
trial on the basis that the statements made to the sergeant
were involuntary within the meaning of the rule of *Garrity v
New Jersey,* 385 US 493 (1967). The prosecutor appealed by
leave granted.

The Court of Appeals *held:*

Because the defendant was not confronted with the choice of
either answering the sergeant's questions or being suspended
from his employment, the Recorder's Court erred in finding
that the defendant's statements were coerced within the mean-
ing of the rule in *Garrity* and, therefore, involuntary. Because
the defendant's statements were not involuntary, the admission
at trial of the sergeant's testimony was proper. Accordingly,
the Recorder's Court erred in setting aside the defendant's
conviction and ordering a new trial.

Order of a new trial reversed and conviction reinstated.

WHITE, J., concurring in part and dissenting in part, stated
that, because the district court never made specific findings
concerning the voluntariness of the defendant's statements to
the sergeant, the order granting a new trial should be vacated
and the matter remanded to the district court for proceedings
to establish an adequate record concerning the voluntariness of
the defendant's statements.

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, *John D. O'Hair,* Prosecut-
ing Attorney, *Timothy A. Baughman,* Chief of

Research, Training, and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Goldpaugh & Associates, P.C.* (by *John J. Goldpaugh*), for the defendant.

Before: JANSEN, P.J., and WHITE and K. N. HANSEN,* JJ.

JANSEN, P.J. This is a prosecutor's appeal by leave granted. The people appeal from an order of the Detroit Recorder's Court reversing defendant's conviction and remanding to the 36th District Court for a new trial on the basis that certain statements and paperwork made by defendant were involuntary and, therefore, improperly admitted at trial. We reverse.

Defendant Phillip Jobson was a Detroit police officer. He was convicted, following a jury trial in the 36th District Court, of entering a building without the owner's permission (a misdemeanor). The conviction arose out of police raids at two homes in the City of Detroit. Defendant and nine other officers on the night of February 21, 1988, participated in "follow-up visits" to the two homes. Apparently, the homes were listed on a special attention sheet, which is a list of homes that had been raided previously and were to be rechecked for any continuing narcotics activity. The raids were not authorized, and the police did not have search warrants.

One of the occupants of the homes called the Tenth Precinct Station after the raids. Sergeant Alan Szczak then personally interviewed the residents of the homes. This prompted Sergeant Szczak to question the various officers concerning

---

* Circuit judge, sitting on the Court of Appeals by assignment.

whether they had been to the two residences. Szczak asked defendant shortly after the raids, and about one week later at the police station, if he had been at the residences involved. Both times, defendant responded that he had not been there. Szczak described the questioning as casual and could not recall if defendant was with anyone else when the questions were asked.

Further, all activity performed by police officers during their patrols is to be recorded in an activity log. Defendant's activity log made no reference to the raids.

Defendant appealed his conviction to the Recorder's Court of Detroit. The Recorder's Court granted defendant a new trial on the basis that the statements made to Szczak and the activity log sheets were involuntary within the meaning of the rule of *Garrity v New Jersey,* 385 US 493; 87 S Ct 616; 17 L Ed 2d 562 (1967), and *People v Allen,* 15 Mich App 387; 166 NW2d 664 (1968). We find that the rule enunciated in *Garrity* does not apply to this case and, therefore, reverse the order of the Recorder's Court granting defendant a new trial.

The issue of the voluntariness of a statement is a question of law for a court's determination. *People v Walker (On Rehearing),* 374 Mich 331, 338; 132 NW2d 87 (1965). In reviewing a trial court's findings, this Court examines the entire record and makes an independent determination of voluntariness. However, this Court gives deference to a trial court's findings, unless they are clearly erroneous. *People v Etheridge,* 196 Mich App 43, 57; 492 NW2d 490 (1992). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *People v Mack,* 190 Mich App 7, 17; 475 NW2d 830 (1991).

In *Garrity,* certain New Jersey police officers were investigated by the state attorney general under direction of the New Jersey Supreme Court. The matter being investigated concerned the alleged fixing of traffic tickets. The police officers were questioned, but before being questioned they were warned that anything they said might be used against them in any state criminal proceeding, that they had the privilege to refuse to answer if the disclosure might incriminate them, and that if they refused to answer they would be subject to removal from office.

The United States Supreme Court stated that the choice given to the officers was to either lose their jobs or incriminate themselves. This option was " 'likely to exert such pressure upon an individual as to disable him from making a free and rational choice.' " *Garrity,* 385 US 497, quoting *Miranda v Arizona,* 384 US 436, 464-465; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Thus the statements were held to be coerced and involuntary and admitted in the subsequent criminal prosecutions in violation of the right against self-incrimination under the Fifth Amendment.

In *Allen,* certain Detroit police officers were subpoenaed to testify before a judge (a so-called "one person grand jury"). The investigation concerned alleged bribery and corruption of public officials. The officers were advised of their right to remain silent when they were called to testify. The officers were arrested following their testimony and, subsequently, were bound over on charges of perjury. Before trial, the officers challenged the admissibility of their statements before the grand jury on Fifth Amendment grounds. Upon denial of their motions to quash the information and dismiss the perjury charges, the officers appealed to this Court.

In *Allen,* the prosecutor in the grand jury proceedings threatened one of the officers (but none of the defendants in *Allen*) with discharge if the Fifth Amendment privilege was asserted. However, there was no evidentiary record made in the trial court concerning whether the defendants in *Allen* at the time of giving their testimony felt coerced by the threat, knew of the threat, and were also aware of an attorney general's opinion indicating that their removal from office under such circumstances would be justified. This Court ultimately remanded for an evidentiary hearing to determine whether the officers' statements were voluntary under these facts.

The factual situation in the instant case is not analogous to the factual situation in either *Garrity* or *Allen.* There is no evidence from the record that defendant was threatened with discharge from his job if he refused to answer Szczak's questions concerning whether he was at the two raided residences on the night of the incidents. *Buckner v Highland Park,* 901 F2d 491, 496 (CA 6, 1990). Rather, Szczak testified that the questions were asked in a casual manner. Defendant's argument that the statements were involuntary because had he failed to answer the questions during a departmental investigation he would have been disciplined, is simply not compelled by either *Garrity* or *Allen.* There is no evidence that defendant actually was threatened that he would be discharged if he did not answer Szczak's questions.

Further, defendant's statements cannot be characterized as "made under the lash of a disciplinary proceeding," *In re Leon Jenkins,* 437 Mich 15, 26; 465 NW2d 317 (1991), or made during a departmental investigation as stated by defendant. Here, Szczak questioned defendant concerning whether he had been at the residences. The questions were

not made in the context of a formal investigation, and, in fact, internal affairs began its investigation after Szczak's questions.

In the absence of the coercive factors and the formal investigations that were present in *Garrity* and *Allen,* we find that the totality of the circumstances surrounding the making of defendant's statements to Szczak indicates that the statements were made freely and voluntarily. *People v Cipriano,* 431 Mich 315, 334; 429 NW2d 781 (1988). This is not a situation where defendant was denied the free choice to admit, deny, or refuse to answer. *Garner v United States,* 424 US 648, 657; 96 S Ct 1178; 47 L Ed 2d 370 (1976). There was thus no coerced confession in this case, because defendant was not presented with the option of either testifying or losing his job if he refused to testify. *Garrity, supra.*

The Recorder's Court judge's finding that defendant was legitimately fearful of losing his job if he refused to answer Szczak's questions, therefore, is clearly erroneous, because there is no evidence from the record that defendant was told that if he refused to answer, he would be discharged. Nor is there any evidence from the record that defendant was even legitimately fearful of losing his job if he refused to answer the questions.

Finally, we note that the activity log sheet, which police officers are required to complete, was properly admitted pursuant to MRE 803(6), (7).

We reverse the order granting defendant a new trial and remand for reinstatement of his conviction.

K. N. HANSEN, J., concurred.

WHITE, J. *(concurring in part and dissenting in part).* The Recorder's Court judge, sitting as an

appellate judge, ordered a new trial on the basis of his finding that Jobson "legitimately was fearful of loss of [his] job if he refused to answer." This finding apparently was based on the prosecutor's statement that "the [c]ourt could assume that Officer Jobson was aware that if ultimately he refused to answer he could be disciplined; but that choice was not posed to him at that point, and that choice would be posed to him by Internal Affairs, subsequently."

I agree that the prosecutor's statement does not support a finding of compulsion that would require Jobson's answers to Sgt. Szczak's questions to be suppressed under *Garrity v New Jersey,* 385 US 493; 87 S Ct 616; 17 L Ed 2d 562 (1967). I am, however, of the opinion that the case should be remanded for further proceedings.

While Szczak's trial testimony indicates that the questioning was casual, he testified at the preliminary examination both that the officers were ordered to answer and that they were not ordered to answer. It does not appear that either district court judge, the preliminary examination judge or the trial judge, made findings regarding the voluntariness of Jobson's answers to Szczak's questions.

The lower court record submitted to this Court does not contain a written motion concerning the *Garrity* issue. The preliminary examination transcript contains counsels' arguments and the court's ruling on the *Garrity* issue as it pertains to the admissibility of the officers' log sheets. The judge ruled that *Garrity* did not apply, because there was no formal investigation being conducted by an outside agency, as in *Garrity* and *People v Allen,* 15 Mich App 387; 116 NW2d 664 (1968), and because the log sheets were not asked for specifically, but were submitted in the ordinary course of

the officers' duties.[1] The judge concluded that "*Garrity* does not cover those circumstances and ought not to be broadened to cover possible acts, statements, reports of any policeman doing anything while in the line of duty at any time." Apart from this ruling, the preliminary examination judge does not appear to have ruled on the admissibility or voluntariness of the officers', more specifically Jobson's, oral statements to Szczak.

The trial transcripts do not indicate that the *Garrity* issue was argued to or ruled on by the judge presiding at the trial. It appears that to the extent the issue was raised, it was raised before the preliminary examination judge. The prosecutor does not argue here, and apparently did not argue in the Recorder's Court, that the *Garrity* issue was waived with respect to the oral statements to Szczak.

The preliminary examination judge did not address directly the question of the admissibility of the oral statements, and it is unclear whether the ruling concerning the log sheets was intended also to apply to the oral statements. It is possible that the judge made such a ruling in a portion of the record that has not been submitted to this Court. In any event, the ruling regarding the log sheet appears to conclude that *Garrity* does not apply as a matter of law because there was no formal investigation being conducted by an outside agency. While I agree with the district judge that *Garrity* does not "cover all possible acts, statements and reports of any policeman doing anything while in the line of duty at any time," I do not believe *Garrity* requires that a formal investi-

---

[1] As Jobson notes in his brief, the Recorder's Court judge did not address the *Garrity* issue as it pertains to the log sheets and did not hold that the log sheets should not have been admitted. Because Jobson did not cross appeal with respect to this issue, the issue is not before this Court.

gation conducted by an outside agency be in progress.

We have before us no findings at the trial court level regarding the circumstances surrounding Jobson's statements to Szczak. The Recorder's Court judge made a finding that Jobson "legitimately was fearful" of losing his job, but I agree that finding should be set aside. The prosecutor's statement on which it was based did not support the finding, and a finding on this issue should be made, in the first instance, by a district judge. The Recorder's Court judge indicated his inclination to remand the case to the district court, but both counsel resisted a remand. Nevertheless, I believe a remand was necessary.

The record contains insufficient information from which to conclude that Jobson had or did not have a reasonable belief that he would be fired if he invoked his Fifth Amendment privilege rather than answer Szczak's questions. Jobson did not testify. Szczak testified that he did not use the "*Garrity* procedure," but did not explain how that procedure operates in the Detroit Police Department. He was not asked what would have happened had an officer refused to answer his questions with or without invoking his Fifth Amendment privilege. He was not questioned whether there were departmental rules or collective bargaining provisions regarding an officer's obligation to answer questions in an informal or formal setting.

While I agree the record was inadequate to support the judge's finding that Jobson was compelled to answer, it is not clear from the record that Jobson had an adequate opportunity to develop a record that might support such a finding or that a district judge made a contrary finding or any finding at all. I, therefore, would vacate the

order granting a new trial and remand to the district court for further proceedings.