PEOPLE v COUTU (ON REMAND)

Docket No. 188417. Submitted April 15, 1999, at Lansing. Decided June 1,
1999, at 9:10 A.M. Leave to appeal sought.

James Coutu, Sr., Arthur Kinney, Gerald Reeves, and Hollie Spear,
Oakland County Sheriff's deputies, were charged in the 51st Dis-
trict Court with misconduct in office and conspiracy to commit
misconduct in office for allegedly giving preferential treatment to
certain work-release inmates and trusties in the Oakland County
jail and receiving gifts and favors from inmates. The court, Robert
W. Carr, J., denied the bindover motion at the preliminary examina-
tion, ruling that misconduct in office, as charged against the
defendants, includes quid pro quo as an element and that the prose-
cution failed to show that the defendants extended preferential
treatment in exchange for gifts and favors. The Oakland Circuit
Court, Alice L. Gilbert, J., affirmed. The Court of Appeals, HOOD,
P.J., and MCDONALD and YOUNG, JJ., affirmed in an unpublished opin-
ion per curiam, issued September 9, 1997 (Docket No. 188417),
affirmed on the different grounds that the defendants did not hold
public office and therefore could not be charged with misconduct
in office. The Supreme Court reversed, holding that the defendants
were public officials for purposes of the charges of misconduct in
office. The Supreme Court remanded the case to the Court of
Appeals for consideration of the arguments raised in the prosecu-
tion's appeal. 459 Mich 348 (1999).

On remand, the Court of Appeals *held*:

1. The district court erred in suppressing evidence of statements
made by defendants Kinney, Spear, and Reeves to their superiors
when questioned during an investigation of their activities. Con-
trary to the district court's determination, the statements were vol-
untary inasmuch as the defendants freely made the statements, the
defendants were not told that their employment would be termi-
nated if they did not waive their constitutional rights against com-
pelled self-incrimination, and there was no procedure mandated by
statute or ordinance for termination on such basis.

2. Misconduct in office involving corrupt behavior requires for
conviction proof of corrupt intent, i.e., intentional or purposeful
misbehavior or wrongful conduct pertaining to the requirements

and duties of office by an officer, but does not require proof of a quid pro quo between the officer and the person benefited by the officer's misconduct.

3. The matter must be remanded to the district court for a redetermination whether the defendants should be bound over for trial.

Reversed and remanded for further proceedings.

1. CONSTITUTIONAL LAW — SELF-INCRIMINATION — POLICE OFFICERS.

A self-incriminating statement made by a police officer during an investigation of suspected criminal activity by the officer is not inadmissible in the officer's criminal prosecution as being involuntary where the officer was not told that the officer's employment would be terminated if the officer did not waive the constitutional right against compelled self-incrimination and there is no procedure mandated by statute or ordinance for termination on such basis.

2. CRIMINAL LAW — MISCONDUCT IN OFFICE — CORRUPTION.

Misconduct in office involving corrupt behavior requires for conviction proof of corrupt intent, i.e., intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of office by an officer, but does not require proof of a quid pro quo between the officer and the person benefited by the officer's misconduct (MCL 750.505; MSA 28.773).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Richard Thompson*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Kathryn G. Barnes*, Assistant Prosecuting Attorney, for the people.

*Arthur Jay Weiss*, for James Coutu, Sr.

*Fieger, Fieger & Schwartz, P.C.* (by *Michael Alan Schwartz*), for Gerald Reeves.

ON REMAND

Before: HOOD, P.J., and MCDONALD and SAWYER, JJ.

PER CURIAM. The district court refused to bind defendants over on charges of misconduct in office

and conspiracy to commit misconduct in office, MCL 750.505; MSA 28.773 and MCL 750.157a; MSA 28.354(1). It dismissed the charges after concluding that proof of a quid pro quo linking inmates' gifts to favors by defendants was a necessary element of the charge of misconduct in office and that there was no evidence of quid pro quo. In August 1995, the circuit court affirmed the district court's ruling. The prosecution appealed by leave granted, and this Court affirmed the dismissal of the charges against defendants, but on different grounds, specifically that defendants did not hold "public office" and therefore could not be charged with abuse of office. *People v Coutu*, unpublished opinion per curiam of the Court of Appeals, issued September 9, 1997 (Docket No. 188417). The Supreme Court reversed, finding that defendants were "public officials for purposes of their misconduct in office charges because the charges arose from the performance of their duties with the Oakland County Sheriff's Department work-release facility." *People v Coutu*, 459 Mich 348, 358-359; 589 NW2d 458 (1999). The Court then remanded this case for our consideration of the remainder of the prosecution's arguments associated with the prior appeal. *Id.* at 359. We now reverse the decision of the lower courts with regard to issues I and II raised by the prosecutor, and remand with regard to issue III raised by the prosecutor.

## I. FACTS

Defendants James Coutu, Sr., Arthur Kinney, Gerald Reeves, and Hollie Spear were employed by the Oakland County Sheriff's Department. Reeves, a captain, was responsible for all satellite facilities of the main

jail, including the work-release facility, a separate installation where individuals who are in custody are allowed to go to their jobs. Sergeant Coutu was responsible for the operation of the work-release facility, and deputies Kinney and Spear were assigned to work at that facility.

The guidelines for the work-release facility include that inmates must travel to and from work using the most direct route and may be at work for ten hours a day, no more than six days a week. An hour travel time in each direction was also allowed. Overtime could be approved at the discretion of the duty officer.[1] When not at work, inmates were required to be at the work-release facility. However, an inmate could be allowed to attend to personal business if approval was sought and given. Work-release inmates were required to pay a fee based on their annual income, and were required to complete work verification forms.

Work-release inmates are different than trusties and some trusties are also housed at the work-release facility. Trusties, unlike work-release inmates, were not able to leave their assigned facility for work purposes and were not required to pay room and board.

Collectively, defendants were charged with ten counts of misconduct in office and one count of con-

---

[1] It appears that the provisions dealing with the amount of time that an inmate may spend at work, or traveling to and from work, could be interpreted in differing ways. Work-release inmates were not permitted to be out of the facility more than ten hours a day for work, plus up to two additional hours for travel to and from work. Whether approved overtime for work had to be included in a ten-hour work day, or whether approved overtime could be in excess of the ten-hour work day was not clearly understood.

spiracy to commit misconduct in office.[2] The charges are based on numerous alleged instances where the defendants gave preferential treatment to work-release inmates and trusties:

> [D]efendants allegedly misrecorded work-release hours, allowing inmates to work additional hours, stay out overnight, and travel out-of-state. Defendants also allegedly permitted certain trustees [sic] to leave the facility. In some instances, defendants allegedly drafted letters on official letterhead requesting judges to provide favored inmates with early release or work-release status. In exchange, defendants allegedly accepted gifts and favors from inmates. They included money, alcohol, mountain bikes, concert tickets, basketball tickets, cartons of orange juice, extensive home remodeling, automobile repairs, shrink wrapping service, a "no cost" mortgage, and employment for relatives. [*Id.* at 351.]

## II. SUPPRESSION OF STATEMENTS

The district court suppressed certain statements of defendants Kinney, Spear, and Reeves, finding that they were inadmissible because they were involuntarily made. The statements at issue were made by those defendants to superior officers when defendants were being questioned about the work-release facility. The circuit court affirmed this ruling. We reverse.

In *Garrity v New Jersey*, 385 US 493, 494; 87 S Ct 616; 17 L Ed 2d 562 (1967), the Court addressed a

---

[2] Reeves was charged with one count of misconduct, Coutu with seven counts of misconduct, Spear with four counts of misconduct, and Kinney with two counts of misconduct. All four defendants were also charged with one count of conspiracy. Defendants Coutu and Spear were additionally charged with one count of aiding escape. That charge is not involved in this appeal.

similar issue with regard to police officers who were being investigated about "fixing" traffic tickets. Each officer was informed that his statements might be used against him in a criminal proceeding, that he could refuse to answer if his answer would incriminate him, and that if he did refuse to answer, he was subject to removal from office. *Id.* New Jersey had a forfeiture statute that mandated removal from or forfeiture of office, position, or employment for refusal to testify with regard to matters relating to office, position, or employment on the basis that the disclosure might be incriminating. *Id.* at 494, n 1. Characterizing the situation as one in which the defendants were forced to choose between self-incrimination and employment, the Court stated the question presented as follows: "The question is whether the accused was deprived of his 'free choice to admit, to deny, or to refuse to answer.' " *Id.* at 496. It examined "whether a State, contrary to the requirement of the Fourteenth Amendment, can use the threat of discharge to secure incriminatory evidence against an employee." *Id.* at 499. The Court held:

> [T]he protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and . . . it extends to all whether they are policemen or other members of our body politic. [*Id.* at 500.]

In *United States v Indorato*, 628 F2d 711 (CA 1, 1980), the court reviewed a similar issue, which arose after a police officer was questioned by both a superior officer and the Federal Bureau of Investigation. The defendant, relying on *Garrity*, *supra*, claimed that his statements were coerced and inadmissible.

The court did not agree because there was "no explicit 'or else' choice and no statutorily mandated firing involved." *Id.* at 716. It stated, "We do not think that the subjective fears of defendant as to what might happen if he refused to answer his superior officers bring him within *Garrity's* cloak of protection." *Id.* In making its ruling, the court recognized two common factors of the *Garrity* progeny: (1) the person being investigated was explicitly told that he would be discharged from public employment if he did not waive the constitutional right against self-incrimination, and (2) the procedure was mandated in a statute or municipal ordinance. *Id.* In *Indorato*, there was no overt threat that the defendant would be dismissed if he refused to answer the questions that were asked. *Id.* at 715. An implied threat was insufficient, even where the police department rules provided that the defendant could be subject to dismissal for insubordination, because dismissal was not an imminent consequence of failing to respond. *Id.* See also *Singer v Maine*, 49 F3d 837 (CA 1, 1995).

Recently a panel of this Court addressed a similar issue. *People v Jobson*, 205 Mich App 708, 710; 518 NW2d 526 (1994). The defendant, a Detroit police officer, was convicted of a misdemeanor, entering a building without permission. He was casually questioned regarding unauthorized raids on homes that had previously been raided and were supposed to be rechecked for continuing narcotics activity. *Id.* at 709-710. His activity log made no reference to these "raids" and there were no search warrants. *Id.* at 710. The trial court granted the defendant a new trial after finding that the defendant's statements and his activity log sheets were involuntary and inadmissible

under *Garrity* and under *People v Allen,* 15 Mich App 387; 166 NW2d 664 (1968).[3] *Jobson,* supra at 710. This Court reversed, finding that there was no evidence that the defendant was actually threatened with job loss for refusal to answer questions. *Id.* at 712. The defendant argued that if he had failed to answer the questions during an investigation, he would have been disciplined. The Court noted that the defendant was not questioned as part of a formal investigation. It then held:

> In the absence of the coercive factors and the formal investigations that were present in *Garrity* and *Allen,* we find that the totality of the circumstances surrounding the making of defendant's statements to [his sergeant] indicates that the statements were made freely and voluntarily. This is not a situation where defendant was denied the free choice to admit, deny, or refuse to answer. There was thus no coerced confession in this case, because defendant was not presented with the option of either testifying or losing his job if he refused to testify. [*Id.* at 713 (citations omitted).]

---

[3] In *Allen,* the defendants were Detroit police officers who were subpoenaed to testify before a grand jury with regard to an investigation into crimes, including bribery. Each defendant was advised of his right to remain silent before testifying. After testifying, the defendants were arrested and arraigned on charges of perjury based on their answers to the grand jury. At their preliminary examination, over defendants' objections, the examining magistrate considered as evidence the questions and answers from the grand jury proceedings. The officers objected to the admission of evidence and one basis for the objection was their claim that their statements were coerced because they believed that if they had remained silent, they would have been suspended. *Id.* at 390. This belief was based on an Attorney General opinion, which indicated that removal from office under such circumstances would be justified *and on the fact that the grand jury prosecutor had told another officer that anyone who refused to testify would be removed from their position. Id.* at 390-391 (emphasis added). This Court remanded for an evidentiary hearing regarding the voluntariness of the statements, noting that the prosecutor had threatened one officer with removal and the threat was "transmitted to and was within the knowledge of the defendants." *Id.* at 397-398.

In this case, the totality of the circumstances demonstrates that defendants voluntarily made the statements. Although defendants were questioned as part of an investigation, there was no evidence of coercion whatsoever; defendants Reeves, Kinney, and Spear were never actually threatened with the loss of their jobs had they refused to speak with their superiors.[4] To the contrary, the totality of the circumstances demonstrates that defendants voluntarily made statements. When defendant Spear decided to stop talking freely about the investigation, he informed his superior that he had an attorney and no longer wished to converse with the superior. His superior did nothing in response to this and never ordered Spear to speak further with him. When defendant Kinney decided that he no longer wished to answer his superior's questions, Kinney asked for a union representative and all questioning stopped. The union representative was with Kinney when he placed his initials on documents that he had given to his superior. Kinney thereafter declined to answer any more questions, and his superior did not order him to do so. Defendant Reeves was interviewed by a fellow captain about the work-release program. And, although Reeves was aware that his fellow captain was interviewing him under orders of the sheriff, he was not threatened with any employment ramifications. In addition, there are also no applicable statutes providing for termination in the event that an officer refuses to answer questions during an investigation. And there are no

---

[4] We note that Coutu's statements were clearly not within the *Garrity* exclusion because, as the circuit court noted, Coutu was apparently specifically told that he did not have to participate and that failure to respond would not result in disciplinary action.

department regulations or rules that provide for automatic termination for failing to answer questions during an interview. Although there are disciplinary rules and regulations, particularly for acts of insubordination, the range of disciplinary actions span from oral reprimands to termination. Termination is not an imminent consequence of failing to answer questions during an investigation.

Viewing all of the circumstances, the facts simply do not show that defendants were forced to choose between invoking their right to silence at the expense of their jobs or incriminating themselves. We find that because there was no overt threat of employment termination in the event that defendants chose to remain silent instead of answering questions as part of the investigation, *Garrity, supra,* does not apply, and suppression of defendants' statements was error.

## II. QUID PRO QUO AS AN ELEMENT OF THE OFFENSE OF MISCONDUCT IN OFFICE

We disagree with the lower courts that in order to prove misconduct in office there must be a showing of "quid pro quo" linking the inmates' gifts to favors by the defendants.

The statute under which defendants were charged for misconduct in office, MCL 750.505; MSA 28.773, provides:

> Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison

not more than 5 years or by a fine of not more than $10,000, or both in the discretion of the court.[5]

The offense of misconduct in office was an indictable offense at common law. "Malfeasance, misfeasance, nonfeasance, misconduct, misbehavior, or misdemeanor in public office is indictable at common-law . . . ." 67 CJS, Officers, § 256, pp 787-788. See also *People v Thomas*, 438 Mich 448, 460; 475 NW2d 288 (1991) (BOYLE, J.). It appears that not only violations of statutory duties are indictable, but also discretionary acts performed with an improper or corrupt motive are subject to indictment. 67 CJS, Officers, § 256, pp 788-790. Because misconduct in office involving corrupt behavior was indictable at common law, the prosecutor properly charged defendants pursuant to MCL 750.505; MSA 28.773, assuming of course that the conduct charged in this case was not more properly charged pursuant to another statute, i.e., the statute prohibiting the use of prison labor for personal benefit, MCL 801.10(2); MSA 28.1730(2), or the bribery statute, MCL 750.118; MSA 28.313.

The offense itself, misconduct in office, is defined as "corrupt behavior by an officer in the exercise of the duties of his office or while acting under color of his office." Perkins & Boyce, Criminal Law (3d ed), p 543. It encompasses malfeasance, which is the doing of a wrongful act, misfeasance, which is the doing of a lawful act in a wrongful manner, and nonfeasance, which is the failure to do an act required by the

---

[5] Defendants' arguments concerning the constitutionality of this statute have no merit. This statute has been upheld as constitutional and has specifically withstood a challenge for vagueness. *People v Pickett*, 339 Mich 294, 309-311; 63 NW2d 681 (1954); *People v O'Neal*, 22 Mich App 432, 434-436; 177 NW2d 636 (1970).

duties of the office. *Id.* at 458, citing Perkins & Boyce, supra at 540. It does not encompass erroneous acts done by officers in good faith or honest mistakes committed by an officer in the discharge of his duties. *Id.* at 541.

> The term, "misconduct in office" or "official misconduct" is broad enough to include any willful malfeasance, misfeasance, or nonfeasance in office. The term may, indeed in its common acceptation does, imply any act, either of omission or commission, on the part of an officer, by which the legal duties imposed by law have not been properly and faithfully discharged. Likewise, misconduct in office is corrupt misbehavior by an officer in the exercise of the duties of his office or while acting under color of his office, and criminal intent is an essential element of the crime. [67 CJS, Officers, §·256, pp 789-790.]

The crimes for which defendants were charged require a showing of corrupt intent. Perkins & Boyce, supra at 541-542.

"Corruption" in this context means a "sense of depravity, perversion or taint." *Id.* at 542. "Depravity" is defined as "the state of being depraved" and "depraved" is defined as "morally corrupt or perverted." *Random House Webster's College Dictionary* (1997). "Perversion" is "the act of perverting," and the term "perverted" includes in its definition "misguided; distorted; misinterpreted" and "turned from what is considered right or true." *Id.* The definition of "taint" includes "a trace of something bad or offensive." *Id.* Pursuant to the definitions, a corrupt intent can be shown where there is intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of office by an officer. See also Perkins & Boyce, supra at 542 ("It is *corrupt*

for an officer purposely to violate the duties of his office."). The corrupt intent needed to prove misconduct of office does not necessarily require an intent for one to profit for oneself. *Thomas, supra* at 461, n 6.

> Official misconduct does not necessarily involve money as do the crimes of bribery and extortion, but as a common-law offense is much more inclusive, misconduct in office is not limited to obtaining property from another, but is supported if there is an injury to the public or an individual. [67 CJS, Officers, § 256, p 790.]

Thus, we find that there is no quid pro quo requirement. If the acts alleged against defendants demonstrate a tainted or perverse use of the powers and privileges granted them, or a perversion of the trust placed in them by the people of this state, who expect that law enforcement personnel overseeing inmates will do so in a manner that is fair and equitable, they are sufficient to sustain a charge of misconduct in office.

In making our ruling, we note that we do not find any support for the proposition that the common-law offense of misconduct in office includes some kind of an element of quid pro quo and that the prosecution may not proceed unless there is proof that defendants acted because of the gifts given by the inmates or that the inmates gave gifts in order to receive favors from defendants.[6]

---

[6] Defendant Reeves cites extensively an unpublished opinion of this Court as setting forth quid pro quo as a necessary element of the common-law offense of misconduct in office. Even if the opinion so held, which it does not, unpublished opinions are of no precedential value. MCR 7.215(C)(1).

III. DISMISSAL OF THE CHARGES

As previously discussed, the district court disagreed that there was probable cause to bind defendants over on the charges of misconduct in office or conspiracy to commit misconduct in office. It ruled that "absent any quid pro quo," the receipt of gifts or the granting of favors would not constitute a violation." The circuit court affirmed.

We review the circuit court's decision de novo. *People v Tower*, 215 Mich App 318, 320; 544 NW2d 752 (1996). It must be determined whether the district court abused its discretion in deciding whether the prosecution established probable cause to believe that the defendant committed the charged offense. *Id.*

> A defendant must be bound over for trial if evidence is presented at the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant was the perpetrator. There must be some evidence from which each element of the crime may be inferred. Probable cause that the defendant has committed the crime charged is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged. [*Id.* at 319-320.]

We find that the circuit court was wrong in affirming the district court's ruling that defendants should not be bound over because of the absence of any quid pro quo. The district court abused its discretion when it applied the wrong analysis. Because we have determined that quid pro quo is not an essential element of the crime of misconduct in office, we find it necessary to remand this case to the district court for a determination whether defendants should be bound over on the charges of misconduct in office in

light of our ruling that evidence of a corrupt intent, as defined above, is sufficient upon which to base the charges. Similarly, on remand, the district court will need to determine whether there was sufficient evidence to find probable cause of a conspiracy to commit misconduct in office. We also note that, on remand, the district court should consider whether any of the charges should have been brought under any other statutes as opposed to MCL 750.505; MSA 28.773, an argument made by defendants but not previously addressed.

Reversed and remanded for further proceedings. We do not retain jurisdiction.