PEOPLE v HUGHES

PEOPLE v HARRIS

PEOPLE v LITTLE

Docket Nos. 316072, 317158, and 317272. Submitted January 15, 2014, at Detroit. Decided July 15, 2014, at 9:00 a.m. Leave to appeal sought.

Following an incident in the city of Detroit during which Nevin Hughes, a Detroit police officer, allegedly assaulted a person and the investigation of the incident by the Detroit Board of Police Commissioners Office of the Chief Investigator (OCI), during which Hughes made statements under the threat of dismissal from his job, Hughes was charged in the 36th District Court with felony misconduct in office, misdemeanor assault and battery, and obstruction of justice. Two other Detroit police officers, Sean Harris and William Little, who had been standing nearby during the incident and had also made statements during the OCI investigation under the threat of dismissal from their jobs, were also charged in the district court with obstruction of justice. The district court dismissed the obstruction-of-justice charges against the three defendants, relying on US Const, Am V, and MCL 15.393, which concerns the use in criminal prosecutions of involuntary statements made by law enforcement officers. The Wayne Circuit Court, Bruce U. Morrow, J., affirmed the dismissal of the obstruction-of-justice charges. The Court of Appeals granted the applications by the prosecution for leave to appeal with regard to each defendant and consolidated the appeals.

The Court of Appeals *held*:

1. The Fifth Amendment did not bar the admission in the prosecutions for obstruction of justice of the false statements defendants made during the OCI investigation. The United States Supreme Court held in *Garrity v New Jersey*, 385 US 493 (1967), that the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office. *Garrity* precludes use of public employees' compelled incriminating statements in a later prosecution for the

conduct under investigation. However, *Garrity* does not preclude use of such statements in prosecutions for the independent crimes of obstructing the public employer's investigation or making false statements during it. The Fifth Amendment did not prohibit the use of defendants' statements in prosecutions for the independent crimes of obstructing the public employer's investigation or making false statements during it. The Fifth Amendment did not entitle defendants to swear falsely. The reasoning in *People v Allen*, 15 Mich App 387 (1968), which conflicts with this holding is expressly disavowed. The district court abused its discretion by relying on the Fifth Amendment to exclude defendants' false statements from evidence.

2. The district court also abused its discretion by excluding defendants' false statements under MCL 15.393, which precludes the use of a police officer's involuntary statement against that officer in a criminal prosecution. Although the broad language of MCL 15.393 appears to embrace any criminal proceeding, including prosecutions for the collateral offenses of perjury or obstruction of justice, the statute internally limits the phrase "involuntary statement" to include true statements only. Therefore, false statements and lies fall outside the scope of the statute's protection. An officer's lies and false statements do not qualify as involuntary statements under MCL 15.393 and may be used as evidence in a subsequent criminal prosecution. The plain language of MCL 15.391(a), which defines the phrase "involuntary statement," establishes that an involuntary statement includes only truthful and factual information. When an officer lies, he or she provides no "information." MCL 15.393 does not preclude the use of the officer's lies in a criminal proceeding. The district court abused its discretion by excluding defendants' false statements from evidence and dismissing the obstruction-of-justice charges against them. The circuit court erred by affirming the district court's rulings. The decisions of the district court and the circuit court in this regard are reversed and the matter is remanded to the district court for reinstatement of the obstruction-of-justice charges against all three defendants.

Reversed and remanded.

WILDER, J., concurring in part and dissenting in part, concurred with the majority's determination that the district court abused its discretion by excluding the use of defendants' statements under the Fifth Amendment but dissented from the majority's determination that the district court misinterpreted MCL 15.393 and abused its discretion by dismissing the charges of obstruction of justice against defendants. The Legislature, by using the phrase "a

criminal proceeding" in MCL 15.393 instead of the phrase "the criminal proceeding," expressed its intention to require a more generalized application of the statute than the narrower protection the Fifth Amendment would afford. Therefore, the statute bars the use of involuntary statements in subsequent prosecutions for perjury or obstruction of justice. In addition, the Legislature did not define "involuntary statement" to include only true statements. Because the term "misinform" is defined as giving false or misleading information to, the term "information" in MCL 15.393 must be interpreted to include the giving of "misinformation." The Legislature's failure to make a distinction between accurate and inaccurate information demonstrates its intent that MCL 15.393 broadly apply to defendants' involuntary statements, regardless of their accuracy. MCL 15.393 operates to bar the use of defendants' statements in their prosecution for obstruction of justice. The judgment of the circuit court should be affirmed.

1. CONSTITUTIONAL LAW — SELF-INCRIMINATION — PERJURY.

The Fifth Amendment does not protect a defendant from a subsequent prosecution for perjury predicated on statements that the defendant made after being granted immunity from prosecution regarding the underlying crime; the Fifth Amendment privilege against self-incrimination grants a privilege to remain silent without risking contempt, but does not endow the person who testifies with a license to commit perjury; the right against self-incrimination only protects a witness from incriminating himself or herself for crimes already committed.

2. CONSTITUTIONAL LAW — SELF-INCRIMINATION — PERJURY.

The protection of the individual under the Fourteenth Amendment against coerced statements prohibits the use in subsequent proceedings of statements obtained under threat of removal from office; a public employee's compelled incriminating statements may not be used in a later prosecution for the conduct under investigation but may be used in prosecutions for the independent crimes of obstructing the public employer's investigation or making false statements during it.

3. CRIMINAL LAW — EVIDENCE — POLICE OFFICERS' INVOLUNTARY STATEMENTS.

MCL 15.393 precludes the use of a police officer's involuntary statement against the officer in a criminal prosecution; MCL 15.391(a) defines an "involuntary statement" as information provided by a law enforcement officer, if compelled under threat of dismissal from employment or any other employment sanction by the law enforcement agency that employs the officer; MCL 15.393

internally limits the phrase "involuntary statement" to include true statements only; lies and false statements do not qualify as involuntary statements under MCL 15.393.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Kym Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *David A. McCreedy*, Lead Appellate Attorney, for the people.

*Goldpaugh & Associates, PC* (by *Donald H. Stolberg*), for Nevin Hughes.

*Steven Fishman* for Sean Harris.

*Pamella Szydlak* for William Little.

Before: METER, P.J., and JANSEN and WILDER, JJ.

JANSEN, J. In these consolidated appeals, the prosecution appeals by leave granted the circuit court's order denying its motion to reinstate the obstruction-of-justice charge against defendant Nevin Hughes,[1] as well as the circuit court's ruling affirming the district court's dismissal of the obstruction-of-justice charges against defendants Sean Harris and William Little.[2] For the reasons set forth in this opinion, we reverse and remand to the district court for reinstatement of the obstruction-of-justice charges against all three defendants.

I

These appeals arise out of a police-citizen interaction

---

[1] *People v Hughes*, unpublished order of the Court of Appeals, entered June 3, 2013 (Docket No. 316072).

[2] *People v Harris*, unpublished order of the Court of Appeals, entered August 15, 2013 (Docket No. 317158); *People v Little*, unpublished order of the Court of Appeals, entered August 15, 2013 (Docket No. 317272).

on November 19, 2009, involving Dajuan James Hodges-Lamar and defendants. Defendant Hughes, a Detroit police officer, approached Hodges-Lamar at a Detroit gas station and asked him questions regarding his license, registration, and the presence of drugs in his car. Hughes then opened the door of Hodges-Lamar's automobile, pulled Hodges-Lamar out by the collar, slammed Hodges-Lamar against the car, and searched him. Defendants Harris and Little, also Detroit police officers, were standing nearby. Hughes pushed Hodges-Lamar toward Harris and Little. Hughes subsequently punched Hodges-Lamar in the throat with an open hand, punched him again, pushed him to the ground, picked him up by the collar several times, slammed him onto the car, and finally pushed him back toward Harris and Little. Hodges-Lamar never alleged that Harris and Little assaulted him.

Defendants arrested Hodges-Lamar and searched his car. Hodges-Lamar received tickets for failure to wear a seatbelt, no proof of registration, and no proof of insurance. Eventually, the tickets were dismissed. Hodges-Lamar sought medical attention and another police officer took his statement at an area hospital.

The Detroit Board of Police Commissioners Office of the Chief Investigator (OCI) investigated the incident and interviewed defendants in July and August 2010. The OCI provided defendants with a standard departmental constitutional-rights form. The fourth paragraph of the form stated: "If I refuse . . . to answer questions . . . I will be subject to departmental charges which could result in my dismissal from the police department." The fifth paragraph stated: "If I do answer . . . neither my statements nor any information or evidence which is gained by reason of such statements can be used against me in any subsequent criminal

proceeding." Defendants also received a reservation of rights form, which provided, in relevant part:

> It is my further belief that this Statement and the Preliminary Complaint Report will not and cannot be used against me in any subsequent proceedings other than disciplinary proceedings within the confines of the Department itself. For any and all other purposes, I hereby reserve my Constitutional rights to remain silent under the FIFTH and FOURTEENTH AMMEND-MENTS [sic] to the UNITED STATES CONSTITU-TION, and Article I, Section 17 of the MICHIGAN CONSTITUTION.

Defendants made statements under the threat of dismissal from their jobs. Harris and Little denied that Hughes had any physical contact with Hodges-Lamar, with the exception of a pat-down search. Hughes admitted that he pulled Hodges-Lamar out of the car, but maintained that he did not use any force against Hodges-Lamar.

The investigation was closed. Hodges-Lamar hired an attorney, who ultimately obtained a video recording of the assault and battery from the security camera at the gas station. The video recording was provided to the Detroit Police Department Internal Affairs Section. The prosecution subsequently charged Hughes with felony misconduct in office, MCL 750.505, misdemeanor assault and battery, MCL 750.81, and obstruction of justice, MCL 750.505. The prosecution charged Harris and Little each with one count of obstruction of justice, MCL 750.505. The video recording was played for the district court by stipulation of the parties. The district court dismissed the obstruction-of-justice charges against all three defendants, relying on the Fifth Amendment of the United States Constitution and § 3 of the act concerning the disclosure of certain state-

ments by law enforcement officers,[3] MCL 15.393. The circuit court affirmed the district court's dismissals and declined to reinstate the obstruction-of-justice charges.

II

The prosecution argues that the district court should have admitted at the preliminary examination defendants' statements made during the OCI investigation because neither *Garrity v New Jersey*, 385 US 493; 87 S Ct 616; 17 L Ed 2d 562 (1967), nor MCL 15.393 prohibits the use of an officer's false denials in a subsequent obstruction-of-justice prosecution. We agree.

A

We review for an abuse of discretion the trial court's decision whether to admit evidence, but review de novo the trial court's decision on any preliminary question of law. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "A trial court abuses its discretion when its decision falls 'outside the range of principled outcomes.' " *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010), quoting *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012). "A district court's ruling that alleged conduct falls within the scope of a criminal law is a question of law that is reviewed de novo . . . ." *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009). We similarly review de novo questions of constitutional law and statutory interpretation. *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011).

---

[3] MCL 15.391 *et seq.*

B

The district court abused its discretion by excluding defendants' statements under the Fifth Amendment of the United States Constitution.

> The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." This prohibition "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' " [*People v Wyngaard*, 462 Mich 659, 671-672; 614 NW2d 143 (2000), quoting *Minnesota v Murphy*, 465 US 420, 426; 104 S Ct 1136; 79 L Ed 2d 409 (1984), in turn quoting *Lefkowitz v Turley*, 414 US 70, 77; 94 S Ct 316; 38 L Ed 2d 274 (1973).]

To invoke the protection of the Fifth Amendment, a witness must only possess a reasonable belief that the evidence could be used against him or her in a criminal prosecution. *Maness v Meyers*, 419 US 449, 461; 95 S Ct 584; 42 L Ed 2d 574 (1975); *People v Bassage*, 274 Mich App 321, 324-325; 733 NW2d 398 (2007). "The state constitutional right against self-incrimination is interpreted no differently than the federal right." *Bassage*, 274 Mich App at 324.

In *Garrity*, 385 US at 494, the New Jersey attorney general's office interviewed police officers about "fixing" traffic tickets. Before the interviews, the attorney general's office warned the police officers that anything they said might be used against them in subsequent criminal proceedings and that they had the right to refuse to answer. *Id*. However, they were also warned that if they refused to answer, they would be subject to termination from their positions. *Id*. The attorney general's office later used the police officers' answers to

prosecute them for conspiracy to obstruct the administration of the traffic laws. *Id.* at 495. The United States Supreme Court held that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office . . . ." *Id.* at 500.

Since its decision in *Garrity*, the United States Supreme Court has held that the Fifth Amendment does not protect a defendant from a subsequent prosecution for perjury predicated on statements that the defendant made on the stand after being granted immunity from prosecution regarding the underlying crime. See *United States v Wong*, 431 US 174, 178; 97 S Ct 1823; 52 L Ed 2d 231 (1977) (holding that "the Fifth Amendment privilege [against self-incrimination] does not condone perjury" and that "[i]t grants a privilege to remain silent without risking contempt, but it 'does not endow the person who testifies with a license to commit perjury' ") (citation omitted); see also *United States v Apfelbaum*, 445 US 115, 117, 131; 100 S Ct 948; 63 L Ed 2d 250 (1980) (holding that "proper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely" and that "neither the immunity statute nor the Fifth Amendment precludes the use of [a defendant's] immunized testimony at a subsequent prosecution for making false statements, so long as that testimony conforms to otherwise applicable rules of evidence").

Similarly, the United States Court of Appeals for the Sixth Circuit has observed that, as a general rule, "the Fifth Amendment permits the government to use compelled statements obtained during an investigation if the use is limited to a prosecution for collateral crimes

such as perjury or obstruction of justice." *McKinley v City of Mansfield*, 404 F3d 418, 427 (CA 6, 2005). "This rule applies with equal force when the statements at issue were made pursuant to a grant of *Garrity* immunity during the course of a public employer's investigation of its own." *Id*. In other words, "*Garrity* precludes use of public employees' compelled incriminating statements in a later prosecution for the conduct under investigation. However, *Garrity* does not preclude use of such statements in prosecutions for the independent crimes of obstructing the public employer's investigation or making false statements during it." *Id*. (citation omitted).

This Court's precedent similarly instructs that we view a defendant's false statements as independent chargeable offenses, for which the allegedly false statements are not admitted to prove any underlying charge, but rather to prove the independent offense of lying. See *Bassage*, 274 Mich App at 325 (noting that "the right against self-incrimination only protects a witness from incriminating himself or herself *for crimes already committed*") (emphasis added). See also *Lefkowitz*, 414 US at 77.

We acknowledge that the case against Hughes differs from the cases against Harris and Little because the focus of the internal investigation was the assault and battery of Hodges-Lamar, which was committed exclusively by Hughes. Hodges-Lamar never accused Harris or Little of any assaultive behavior; Harris and Little were only interviewed as witnesses to Hughes's misconduct. At the same time, however, all three defendants could have reasonably believed that their statements during the OCI interviews might lead to criminal proceedings against them for various nonassaultive offenses, such as misconduct in office (including nonfea-

sance). See *Maness*, 419 US at 461; *Bassage*, 274 Mich App at 324-325; see also *Waterstone*, 296 Mich App at 126. For this reason, the officers' statements could not be used in any criminal prosecution against them "for crimes already committed," *Bassage*, 274 Mich App at 325, such as misconduct in office or assault and battery.

But, as noted previously, the Fifth Amendment did not prohibit the use of defendants' statements "in prosecutions for the independent crimes of obstructing the public employer's investigation or making false statements during it." *McKinley*, 404 F3d at 427. Nor did the Fifth Amendment entitle defendants to swear falsely. *Apfelbaum*, 445 US at 117; see also *Bassage*, 274 Mich App at 326. Thus, there was no Fifth Amendment bar to the admission of defendants' statements in the criminal proceedings (including the preliminary examination) pertaining to the independent obstruction-of-justice charges against them. See *McKinley*, 404 F3d at 427.

We recognize that our holding in this regard, as well as the post-*Garrity* federal caselaw, conflicts with this Court's decision in *People v Allen*, 15 Mich App 387, 388; 166 NW2d 664 (1968). In *Allen*, 15 Mich App at 396, this Court held that "the Fifth and Fourteenth Amendments' benefits of freedom from coerced waiver of the right to remain silent . . . must be respected," even in a subsequent perjury prosecution. In *Allen*, the defendant police officers, who were called to testify before a one-man grand jury about bribery, corruption, vice, and gambling involving the police department, were informed of their right to remain silent. *Id.* at 389-390. However, each of the defendants stated that he believed that if he invoked his right to remain silent, he would be suspended from the police department. *Id.* at 391. After being advised of their rights, the defendants

were asked whether they had accepted bribes, gifts, or gratuities from bar owners and liquor licensees in the city of Detroit. *Id.* at 389. The defendants denied that they had received any bribes, gifts, or gratuities. See *id.* at 389-390. After contrary testimony was received from the bar owners in question, the defendants were charged with perjury for having sworn falsely before the grand jury. *Id.* The defendants' grand-jury testimony, including their allegedly false denials, was admitted into evidence at their preliminary examinations. *Id.* The defendants were bound over for trial on charges of perjury. *Id.* at 390.

The *Allen* Court rejected the prosecution's argument that the principle announced in *Garrity* should not apply in prosecutions for perjury. *Id.* at 393-394. The Court held that the Fifth Amendment barred the admission of the defendants' grand-jury testimony in the subsequent perjury proceedings. *Id.* The *Allen* Court noted that the prosecution could not presume that the defendants' statements were false, and thereby escape the confines of *Garrity*, because the truth or falsity of a defendant's statement was ultimately an issue to be determined by the trier of fact in a perjury prosecution. *Id.* at 393.

Given the intervening developments in federal law, including *Apfelbaum*, 445 US at 117, and *McKinley*, 404 F3d at 427, the reasoning of *Allen* cannot stand. Even assuming that the prosecution treats a defendant's statements or denials as false from the inception of the investigation, the presumption of innocence remains intact and the prosecution is still required to prove the elements of perjury or obstruction of justice beyond a reasonable doubt. Moreover, the prosecution's decision to charge the officer with perjury or obstruction of justice does not run afoul of the Fifth Amendment

guarantee because the allegedly false or perjurious statements would be introduced for the limited purpose of proving perjury or obstruction of justice, not other underlying crimes. See *McKinley*, 404 F3d at 427. Finally, we reiterate that untruths and false denials, such as those provided by defendants in the instant cases, are not protected by the Fifth Amendment. *Apfelbaum*, 445 US at 117; *Wong*, 431 US at 178.

We are not bound to follow *Allen*, which was decided before November 1, 1990. MCR 7.215(J)(1); *People v Ford*, 262 Mich App 443, 452; 687 NW2d 119 (2004).[4] Indeed, in light of the post-*Garrity* caselaw permitting a witness's statements to be used against him or her in a subsequent criminal prosecution for a collateral offense such as perjury or obstruction of justice, we expressly disavow *Allen*'s reasoning.

The Fifth Amendment did not bar the admission of defendants' false statements in the instant prosecutions for obstruction of justice. The district court abused its discretion by relying on the Fifth Amendment to exclude defendants' false statements from evidence.

C

The district court also abused its discretion by excluding defendants' false statements under MCL 15.393, which precludes the use of a police officer's "involuntary statement" against that officer in a criminal prosecution. Specifically, MCL 15.393 provides:

---

[4] We wish to make clear that the district court did not err insofar as it followed the reasoning of *Allen*. Lower courts are bound to follow this Court's published decisions unless and until they are overruled, vacated, or modified. MCR 7.215(C)(2); *People v Herrick*, 277 Mich App 255, 258; 744 NW2d 370 (2007).

> An involuntary statement made by a law enforcement
> officer, and any information derived from that involuntary
> statement, shall not be used against the law enforcement
> officer in a criminal proceeding.

We recognize that whereas the Fifth Amendment
only protects witnesses from incriminating themselves
with respect to "crimes already committed," *Bassage*,
274 Mich App at 325, the broad language of MCL 15.393
appears to embrace *any* criminal proceeding, including
prosecutions for the collateral offenses of perjury or
obstruction of justice. However, we conclude that the
statute internally limits the phrase "involuntary state-
ment" to include true statements only, and that false
statements and lies therefore fall outside the scope of
the statute's protection.

The phrase "involuntary statement" is defined as
"*information* provided by a law enforcement officer, if
compelled under threat of dismissal from employment
or any other employment sanction, by the law enforce-
ment agency that employs the law enforcement officer."
MCL 15.391(a) (emphasis added). But when an officer is
compelled to make a statement during an internal
investigation, and provides only misinformation and
lies, he or she has not provided any "information" at all
within the commonly understood meaning of that word.
Among other things, "information" is defined as
"knowledge communicated or received concerning a
particular fact or circumstance." *Random House Web-
ster's College Dictionary* (1997). The word "knowledge,"
in turn, is defined as "the body of truths or facts
accumulated in the course of time." *Id*. Because an
officer's lies do not impart any truths or facts, they
necessarily do not constitute "information." See MCL
15.391(a). In other words, an officer's lies and false
statements do not qualify as "involuntary state-

ment[s]" under MCL 15.393, and consequently may be used as evidence in a subsequent criminal prosecution.

We conclude that the Legislature's manifest intent was to create a mechanism for facilitating internal police investigations and to provide an incentive for officers who cooperate by providing needed facts. The Legislature certainly did not intend to immunize police officers by precluding the use of their lies and false statements in criminal proceedings. Indeed, such a strained construction of MCL 15.393 would be wholly contrary to the Legislature's purpose in enacting the statute. In sum, the plain language of MCL 15.391(a) establishes that an "involuntary statement" includes only truthful and factual information. Quite simply, when an officer lies, he or she provides no "information." Accordingly, MCL 15.393 does not preclude the use of the officer's lies in a criminal proceeding.

Defendants' lies during the OCI investigation were not entitled to the protection of MCL 15.393. The district court abused its discretion by relying on MCL 15.393 to exclude defendants' false statements from evidence in the prosecutions for obstruction of justice.

III

In sum, the district court erred by misconstruing the Fifth Amendment guarantee as well as MCL 15.393. This error of law led the district court to abuse its discretion by excluding defendants' false statements from evidence and dismissing the obstruction-of-justice charges against them on this ground. The circuit court erred by affirming the district court's rulings. We reverse the decisions of the district court and the circuit court in this regard. We remand to the district court for reinstatement of the obstruction-of-justice charges against all three defendants.

Reversed and remanded to the district court for reinstatement of the obstruction-of-justice charges against all three defendants. We do not retain jurisdiction.

METER, P.J., concurred with JANSEN, J.

WILDER, J. (*concurring in part and dissenting in part*). I concur with the majority's determination in Part II(B) that the district court abused its discretion by excluding the use of defendants' statements under the Fifth Amendment. I respectfully dissent from the majority's determination that the district court misinterpreted MCL 15.393 and abused its discretion by dismissing the charges of obstruction of justice against defendants. I would conclude that defendants' statements were protected under MCL 15.393.

I

MCL 15.393 provides: "An involuntary statement made by a law enforcement officer, and any information derived from that involuntary statement, shall not be used against the law enforcement officer in a criminal proceeding." The Legislature defined "involuntary statement" as "information provided by a law enforcement officer, if compelled under threat of dismissal from employment or any other employment sanction, by the law enforcement agency that employs the law enforcement officer." MCL 15.391(a).

The principles of statutory interpretation are well established. The "goal in interpreting a statute 'is to ascertain and give effect to the intent of the Legislature. The touchstone of legislative intent is the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its

plain meaning and we enforce the statute as written.' "
*People v Hardy*, 494 Mich 430, 439; 835 NW2d 340
(2013), quoting *People v Gardner*, 482 Mich 41, 50; 753
NW2d 78 (2008) (citations omitted).

A

As is true with the Fifth Amendment, which, under
*Garrity v New Jersey*, 385 US 493; 87 S Ct 616; 17 L Ed
2d 562 (1967), prohibits the state from using "the
threat of discharge to secure incriminatory evidence
against an employee," *id.* at 499, the protections of
MCL 15.393 are triggered when law enforcement offic-
ers are faced with the choice "infected by . . . coercion,"
*id.* at 497, between their jobs and self-incrimination:

> The choice given petitioners was either to forfeit their
> jobs or to incriminate themselves. The option to lose their
> means of livelihood or to pay the penalty of self-
> incrimination is the antithesis of free choice to speak out or
> to remain silent. That practice, like interrogation practices
> we reviewed in *Miranda* v. *Arizona*, 384 U.S. 436, 464-465[
> 86 S Ct 1602; 16 L Ed 2d 694 (1966)], is "likely to exert
> such pressure upon an individual as to disable him from
> making a free and rational choice." We think the state-
> ments were infected by the coercion inherent in this
> scheme of questioning and cannot be sustained as volun-
> tary under our prior decisions. [*Id.* at 497-498.]

While the Fifth Amendment protects witnesses only
from incriminating themselves with respect to crimes
already committed, *Lefkowitz v Turley*, 414 US 70, 77;
94 S Ct 316; 38 L Ed 2d 274 (1973), the broad language
of MCL 15.393 is not so limited. The Legislature used
the indefinite article "a," not "the," to modify the
phrase "criminal proceeding." " 'The' and 'a' have
different meanings. 'The' is defined as 'definite article.
1. (used, [especially] before a noun, with a specifying or
particularizing effect, as opposed to the indefinite or

generalizing force of the indefinite article a or an). . . .' "
*Robinson v City of Lansing*, 486 Mich 1, 14; 782 NW2d
171 (2010), quoting *Massey v Mandell*, 462 Mich 375, 382
n 5; 614 NW2d 70 (2000) (citation omitted). By using the
indefinite article, the Legislature did not limit the appli-
cation of the statute to *the* criminal proceeding being
investigated or *the* other crimes already committed.
Rather, by choosing the phrase "a criminal proceeding,"
the Legislature expressed its intention to require a
more generalized application of the statute than the
narrower protection the Fifth Amendment would af-
ford, and therefore the statute bars the use of involun-
tary statements in subsequent prosecutions for perjury
or obstruction of justice. If the Legislature intended
involuntary statements and information derived from
them to be used in collateral proceedings for obstruc-
tion of justice or perjury, the Legislature could and
would have expressly excluded those proceedings from
the statute. *People v Underwood*, 278 Mich App 334,
338; 750 NW2d 612 (2008) ("[P]rovisions not included
in a statute by the Legislature should not be included by
the courts . . . .").

B

Moreover, although the Fifth Amendment does not
allow witnesses to swear falsely, *United States v Apfel-
baum*, 445 US 115, 117, 131; 100 S Ct 948; 63 L Ed 2d
250 (1980), the Legislature did not define "involuntary
statement" to include only true statements. MCL
15.393. On appeal, the prosecution, referring to the
Legislature's definition of an "involuntary statement"
as "information provided by a law enforcement of-
ficer . . . ," MCL 15.391(a), argues that defendants' false
denials during their interviews by the Detroit Board of
Police Commissioners Office of the Chief Investigator

(OCI) constituted misinformation that did not amount to "information" within the meaning of the statute. The majority agrees, relying on the *Random House Webster's College Dictionary* (1997), which defines "information" as "knowledge communicated or received concerning a particular fact or circumstance." The majority concludes that an officer's false denials do not impart any truths or facts, so they cannot constitute "information." I disagree.

The word "misinform" is defined as "giv[ing] false or misleading *information* to." *Random House Webster's College Dictionary* (1997) (emphasis added). Therefore, the term "information" as used in MCL 15.393 must be interpreted to include the giving of "misinformation." Our United States Supreme Court has ruled that similar language in the federal immunity statute, 18 USC 6002, "makes no distinction between truthful and untruthful statements made during the course of the immunized testimony." *Apfelbaum*, 445 US at 122. Section 6002 provides that "no testimony or other *information* compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." (Emphasis added.)[1]

In addition to using the dictionary to give meaning to undefined statutory terms, we also look to the use by the Legislature of the same or similar terms in other statutes to divine Legislative intent. *Linton v Arenac Co Rd Comm*, 273 Mich App 107, 118; 729 NW2d 883 (2006) ("Although the terms of one statute are not

[1] Section 6002 differs from MCL 15.393 in that it requires a witness granted immunity to testify and precludes the witness from invoking the privilege against self-incriminations.

dispositive in determining the meaning of another, especially if the statutes were not designed to effectuate a common result, the terms of one statute may be taken as a factor in determining the interpretation of another statute."). We make every effort to interpret clear and unambiguous language in accordance with its plain meaning because "[c]ourts may not read or include provisions into a statute that the Legislature did not." *People v Haynes*, 281 Mich App 27, 32; 760 NW2d 283 (2008). "The omission of a provision in one statute that is included in another statute should be construed as intentional." *Underwood*, 278 Mich App at 338.

The Legislature has used the term "information" in a number of statutes. For example, in MCL 769.34(10), our Legislature provided that a sentence "within the appropriate guidelines sentence range" should be affirmed on appeal "absent an error in scoring the sentencing guidelines or *inaccurate information* relied upon in determining the defendant's sentence." (Emphasis added.) In MCL 750.492a(1) the Legislature provided that "a health care provider or other person, knowing that the *information is misleading or inaccurate*, shall not intentionally, willfully, or recklessly place or direct another to place in a patient's medical record or chart *misleading or inaccurate information* regarding the diagnosis, treatment, or cause of a patient's condition." (Emphasis added.) See also MCL 168.467b(6) (providing a right to equitable relief for a candidate receiving *"incorrect or inaccurate written information"*) (emphasis added), MCL 487.2140(2) (providing for the correction of submitted information when the *"information . . . is no longer accurate"*) (emphasis added), and MCL 791.235(1)(b) (providing that the parole board shall not consider "[i]*nformation* that is determined by the parole board to be *inaccurate or irrelevant"*) (emphasis added). The Legislature's spe-

cific references to inaccurate or misleading information in the above-cited provisions demonstrate that the distinction between accurate and inaccurate information was relevant to those legislative schemes, and that when such a distinction is important to the Legislature to make, it will do so. The Legislature's failure to make a distinction between accurate and inaccurate information here demonstrates its intent that MCL 15.393 broadly apply to defendants' involuntary statements, regardless of their accuracy. *Underwood*, 278 Mich App at 338.

C

Our United States Supreme Court, in 1967 in *Garrity*, and this Court, in 1968 in *People v Allen*, 15 Mich App 387, 388; 166 NW2d 664 (1968), held that the Fifth Amendment barred the admission of police officers' statements in subsequent prosecutions for conspiracy to obstruct the administration of the traffic laws and perjury, respectively. These holdings remained binding law in Michigan until the United States Supreme Court ruled differently in *Apfelbaum* (1980), *United States v Wong*, 431 US 174; 97 S Ct 1823; 52 L Ed 2d 231 (1977), and *Lefkowitz* (1973). In addition, in *In re Investigative Subpoena re Morton*, 258 Mich App 507; 671 NW2d 570 (2003), this Court upheld an order requiring the production to the prosecutor of three *Garrity* statements by police officers, which resulted in concern that *Garrity* statements would be used in the determination whether to prosecute law enforcement officers. MCL 15.393 was enacted in the wake of *Morton*. See Senate Legislative Analysis, SB 647, February 20, 2007.[2] De-

---

[2] Although legislative analyses are not "an official form of legislative record in Michigan," and I acknowledge that "legislative analyses should be accorded very little significance by courts when construing a statute,"

spite the narrowing of Fifth Amendment protections afforded to law enforcement officers as the result of these cases (and the Legislature is presumed to be aware of these cases),[3] our Legislature was nevertheless free to codify in Michigan law the more robust *Garrity* and *Allen* protections when it enacted MCL 15.393 in 2006.

D

When it crafted MCL 15.393, the Legislature used broad language that did not just protect factually true statements, but "involuntary statement[s]," and did not only protect statements made during the investigation of crimes already committed, but more generally, statements made "in a criminal proceeding."[4] MCL 15.393. Therefore, I would conclude that the Legislature intended MCL 15.393 to protect a law enforcement

---

*In re Certified Question*, 468 Mich 109, 115 n 5; 659 NW2d 597(2003), I cite the Senate Legislative Analysis here for the limited purpose of demonstrating the likely link between this Court's decision in *Morton* and the Legislature's enactment of MCL 15.393.

[3] See *Lewis v LeGrow*, 258 Mich App 175, 183-184; 670 NW2d 675 (2003) ("We presume that the Legislature is aware of the common law that legislation will affect; therefore, if the express language of legislation conflicts with the common law, the unambiguous language of the statute must control.")

[4] The Legislature's enactment of MCL 15.395 in the disclosures by law enforcement officers act also demonstrates its intention to codify broader protections for officers' involuntary statements by making them confidential communications, except under limited circumstances. *Myers v City of Portage*, 304 Mich App 637, 641-642; 848 NW2d 200 (2014). That statute also distinguishes between criminal actions, in which I conclude involuntary statements cannot be used against officers, and civil actions, in which they can be used. A prosecutor or attorney general may obtain a confidential involuntary statement in a criminal case, but the prosecutor or attorney general "shall not disclose the contents." MCL 15.395(b). In contrast, in a civil action, "the court shall preserve by reasonable means the confidentiality of the involuntary statement" only "[u]ntil the close of discovery." MCL 15.395(d).

officer's false denials, even in a subsequent, collateral criminal proceeding such as for perjury or obstruction of justice, and that the district court did not abuse its discretion by excluding defendants' statements under MCL 15.393.

II

Although the Fifth Amendment did not bar the use of defendants' statements in their prosecution for obstruction of justice, I would conclude that MCL 15.393 does operate to bar such statements. I recognize it may seem an untenable result, to permit law enforcement officers to make false denials with impunity when giving involuntary statements under the threat of an employment sanction. The great majority of law enforcement officers, who perform their duties with honor and distinction, would neither need nor desire to take advantage of this anomaly in the law, which seems inconsistent with the design of our system of justice to seek out the truth. See *Polk Co v Dodson*, 454 US 312, 318; 102 S Ct 445; 70 L Ed 2d 509 (1981) ("The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness."). But we are bound to interpret the plain language set forth by the Legislature. We cannot rewrite the law and must apply the statutory text even if we disagree with the result. See *Hanson v Mecosta Co Rd Comm'rs*, 465 Mich 492, 504; 638 NW2d 396 (2002). Therefore, I would affirm the circuit court and urge the Legislature to revisit MCL 15.393 to address this anomaly. See *In re TALH*, 302 Mich App 594, 599; 840 NW2d 398 (2013).